## JOHN N. APGAR v. JOHN B. WOOLSTON AND ELIJAH N. DILTS.

1. If the court in which the prosecution is made has no jurisdiction of the complaint, and the want of jurisdiction is the sole gravamen of the suit, trespass for false imprisonment is the proper action. If the prosecution be malicious and unfounded, and be instituted in a court having no jurisdiction, the party injured may sue either in case, making the malice and want of probable cause the gravamen of his complaint, or in trespass, founding his action on the want of jurisdiction in the court. If the court had jurisdiction, and the process was regular, trespass will not lie, however malicious the conduct of the defendant may have been in setting the prosecution on foot; and the only sustainable action under such circumstances is case for the malicious motive and want of probable cause in promoting the prosecution.

2. No action for a malicious prosecution can be brought while the criminal proceedings are pending. When the criminal prosecution is ended, if it terminates in favor of the accused, he may then maintain his action for a malicious prosecution. Except to confer on the accused the capacity to sue, the manner in which the prosecution terminated is immaterial.

3. The law requires only that the particular prosecution complained of shall have been terminated—and not that the liability of the plaintiff to prosecution for the same offence shall have been extinguished—before the action for malicious prosecution is brought. Consequently the refusal of the grand jury to find an indictment, a *nolle prosequi*, or any proceeding by which the particular prosecution is disposed of in such a manner that it cannot be revived, and that the prosecutor, if he intends to proceed further, must institute proceedings *de novo*, is a sufficient termination of the prosecution to enable the plaintiff to bring his action.

4. A discharge under the sixty-fifth section of the Criminal Procedure act (*Rev*, p. 279,) for not bringing on the trial of an indictment at the term in which issue is joined, or at the term after, operates only to discharge the accused from imprisonment or from his recognizance, and not from the indictment or from the legal consequences of his crime, and is not such a termination of the criminal prosecution as will enable the accused to bring an action for malicious prosecution.

5. The *dictum* in (*Potter* v. *Casterline*, 12 *Vroom* 22,) that a rejection of the complaint by the grand jury is, in an action for a malicious prosecution, *prima facie* evidence of want of probable cause, *disapproved*.

On demurrer to the declaration.

Argued at November Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the demurrant, *Oscar Jeffery.*

Contra, *J. G. Shipman.*

The opinion of the court was delivered by

DEPUE, J. The plaintiff brings his action in trespass on the case for a malicious prosecution, in procuring his indictment in the Court of Oyer and Terminer of the county of Warren, for perjury.

If the court in which the prosecution is made has no jurisdiction of the complaint, and the want of jurisdiction is the sole gravamen of the suit, trespass for false imprisonment is the proper action. If the prosecution be malicious and unfounded, and be instituted in a court having no jurisdiction, the party injured may sue either in case, making the malice and want of probable cause the gravamen of his complaint, or in trespass, founding his action on the want of jurisdiction in the court. If the court had jurisdiction, and the process was regular, trespass will not lie, however malicious the conduct of the defendant may have been in setting the prosecution on foot; and the only sustainable action, under such circumstances, is case for the malicious motive and want of probable cause in promoting the prosecution. 1 *Chit. Pl.* 133, 182, 186; *Elsee* v. *Smith,* 2 *Chit. R.* 304; *Goslin* v. *Wilcock,* 2 *Wils.* 302; *Morris* v. *Scott,* 21 *Wend.* 281.

The court in which the prosecution complained of was instituted, was a court of competent jurisdiction, and the form of action adopted was the proper form.

The allegations in the declaration that the defendant caused and procured the plaintiff to be indicted, and that he did so falsely and maliciously, and without reasonable or probable cause, are sufficient averments that the defendant instituted

the prosecution, and that his motive therefor was malicious. In this respect the declaration conforms to the precedents. *Addison on Torts* 607–611.

The doctrine that no action can be brought by an individual who has been subjected to a criminal prosecution, against the person who sets it on foot, while the prosecution is pending, is founded upon the most urgent considerations of public policy. It is not consistent with public policy unreasonably to discourage criminal prosecutions at the instance of private individuals. If the prosecution results in a conviction of the accused, he can maintain no action against his prosecutor, though he may be able to show, in his civil suit, that the complainant, in preferring the charge, was actuated by motives of intense malignity, and that he had no reasonable ground, at the time he made the complaint, to suspect or believe that the accused was guilty. Considerations of public policy also debar the accused from any action while the prosecution is pending, in which the motives of the complainant in preferring the complaint may be put in issue. If a complainant may be subjected to the harassment of an action while the criminal prosecution is pending, prudent persons would be deterred from ever becoming complainants. When the criminal prosecution is ended, if it terminates in favor of the accused, and the public have no longer any interest in its prosecution, the accused may then maintain his action against the complainant. An action before the criminal prosecution is terminated, is prematurely brought. After it is terminated, the accused, if it has resulted in his favor, may sue; and the gravamen of his suit then will be that the prosecution was instigated maliciously, and without reasonable or probable grounds. Except to confer on the accused the capacity to sue, the manner in which the prosecution terminated is irrelevant.

In *Potter* v. *Casterline*, 12 *Vroom* 22, it was said that the rejection of the complaint by the grand jury is *prima facie* evidence of want of probable cause. This observation was not necessary to the decision of the case—evidence of facts

having been given at the trial from which it might be inferred that the prosecution was without probable cause.

The principal feature in an action for a malicious prosecution, is the fact that the prosecution was without probable cause. In the opinion of Lords Mansfield and Loughborough, in the leading case of *Johnstone* v. *Sutton*, 1 *T. R.* 544, this emphatic language is used: "The essential ground of this action is that a legal prosecution was carried on without a probable cause; we say this is emphatically the essential ground, because every other allegation may be implied from this; but this must be substantially and expressly proved, and cannot be implied." The general rule is that the failure of the proceedings against the plaintiff must be averred and proved; but such failure is not evidence either of the defendant's malice or of the want of probable cause in instituting them. *Stewart* v. *Sonneborn*, 98 *U. S.* 187. It is invariably necessary in an action of this nature to give some positive evidence arising out of the circumstances of the prosecution, to show that it was groundless. 2 *Stark. Ev.* 913. ,

That the acquittal of the plaintiff on the trial of the indictment is not *prima facie* evidence of the want of probable cause for the prosecution, is universally conceded, though it results from the entire failure of the case on the part of the prosecution. Considerable discussion has been had whether the abandonment of the prosecution before or after indictment found is sufficient *prima facie* evidence of want of probable cause. In *Purcell* v. *McNamara*, 1 *Camp*. 199, Lord Ellenborough held that the abandonment of the prosecution after indictment, and the consequent acquittal of the plaintiff for want of evidence, was not *prima facie* evidence of the want of probable cause, and he nonsuited the plaintiff; and his decision was sustained by the King's Bench. *Purcell* v. *McNamara*, 9 *East* 361. Similar rulings were made by Lord Kenyon in *Sykes* v. *Dunbar*, 1 *Camp*. 202, *n.*, and by Le Blanc J., in *Incledon* v. *Berry*, *Id*. 203, *n*. In *Wallis* v. *Alpine*, 1 *Camp*. 204, *n.*, the defendant had charged the plaintiff, on oath, with assaulting him. The plaintiff was

arrested and held on his recognizance for his appearance at the Sessions; no indictment was preferred, and the plaintiff was discharged from his recognizance. There was no extraneous evidence to show want of probable cause or malice, and Lord Ellenborough held that the mere non-prosecution of a charge was not sufficient to maintain the action, and nonsuited the plaintiff. And yet the conduct of the complainant with respect to the prosecution may be such that, under the circumstances, as was said by Le Blanc, J., in Incledon *v*. Berry, slight evidence of the want of probable cause would be sufficient to put the defendant on his defence; and it may have been such as to warrant the leaving of the case to the jury, and even to justify a verdict for the plaintiff. Willans *v*. Taylor is an instance of cases of this latter class. There the defendant presented two bills for perjury against the plaintiff, but did not appear himself before the grand jury, and the bills were ignored. He presented a third bill, and on his own testimony the bill was found. This prosecution he kept suspended for three years, till, the plaintiff taking down the record, the defendant declined to appear as a witness, although in court and called on, and the plaintiff was acquitted. In an action for malicious prosecution, at the first trial the plaintiff was nonsuited for the want of proof that the defendant had acted without probable cause. The nonsuit was set aside (6 *Bing*. 183,) and at the second trial the plaintiff had a verdict. At the second trial, the judge, in his direction, told the jury that if the defendant did not appear at the trial of the indictment from a consciousness that he had no evidence to give which would support the indictment, there was want of probable cause. On error, this instruction was held to be correct, and the affirmance was rested upon the conduct of the defendant in refusing to be a witness at the trial of the indictment after having obtained it on his own testimony. *Taylor* v. *Willans*, 2 *B. & Ad*. 845. It would be impossible to lay down any rule which should indicate what conduct of the defendant should be sufficient *prima facie* evidence of the want of probable cause. Everything will depend upon the special

circumstances of the particular case. But, whatever the evidence shall be, it must be derived from the only legitimate source from which evidence of that character can lawfully be derived, the acts and conduct of the party to be affected by it in the civil suit. The act of the grand jury in ignoring the bill of indictment is, as to the defendant in the civil suit, *res inter alios acta*, and on principle must be considered incompetent testimony except to show that the public prosecution is ended.

In the Treatises on Evidence, the rule is laid down without qualification that, in order to show that the criminal prosecution was groundless and without probable cause; it is not sufficient to show that the bill being preferred was thrown out by the grand jury. 2 *Stark. Ev.* 914; 5 *Phill. Ev.* 256; 2 *Greenl. Ev.*, § 455. In *Nicholson* v. *Coghill*, 4 *B. & C.* 21, Holroyd, J., is reported to have said that *it had been held* that evidence of the bill having been thrown out by the grand jury is sufficient to warrant an inference of the absence of probable cause. This remark was made in an action for a malicious arrest in a civil suit where the defendant was himself an actor in discontinuing the action, and which was expressly distinguished by Abbott, C. J., on that circumstance, from cases where the prosecution was on a criminal charge. I have not been able to find any case in the English courts in which such a decision was made, or in which any observation to that effect was made by any other English judge. I am aware that there are cases in the courts of this country, entitled to the greatest respect, in which it has been held that the failure of the grand jury to indict is *prima facie* evidence of the want of probable cause. But there are also decisions of the courts of our sister states, entitled to equal respect, holding the contrary; and I think the doctrine laid down by Starkie, Phillips and Greenleaf is founded on sound principles of law, and is consistent with public policy.

In an action for a malicious prosecution, the question of probable cause is a question of law for the court. If the facts are in dispute, or the question depends upon a chain of

circumstances connected with the conduct of the parties, the facts and the inferences to be deduced from them must be found by the jury; but when they are found by the jury, the judge is then to decide whether they establish probable cause or the want of it; and the burden of proof being on the plaintiff, if at the close of the plaintiff's case there is no evidence of the want of probable cause, it is the duty of the judge to nonsuit the plaintiff. *Blachford* v. *Dod*, 2 *B. & Ad.* 179; *McDonald* v. *Rooke*, 2 *Bing. N. C.* 217; *Davis* v. *Hardy*, 6 *B. & C.* 225; *Panton* v. *Williams*, 2 *Q. B.* 169; *Turner* v. *Ambler*, 10 *Id.* 252. If the failure of the grand jury to indict be evidence of the want of probable cause, by its action the burden of proof is shifted, and laid upon the defendant *in limine*. The defendant, as a matter of law, is entitled, at the close of the plaintiff's case, to the opinion of the judge as to whether the facts proved by the plaintiff make out a *prima facie* case of the want of probable cause; and the decision of the judge on that subject is reviewable on error. For this legal right will be substituted the opinion of grand jurors without any disclosure of the evidence before them; and, inasmuch as malice may be inferred from the absence of probable cause, the burden of proof upon the whole case is, by the decision of the grand jury, shifted upon the defendant.

In this state, all criminal prosecutions, whether before the grand jury or upon the trial of the indictment, are conducted by the public prosecutor, and exclusively at the public expense. The witnesses are called and sworn by the foreman in the presence of the grand jury, and give their testimony in secret, in the private room where the grand jury holds its sessions. The grand jury may call other witnesses besides those named by the complainant, and practically it is within the discretion of the grand jury what testimony it shall hear. Indictments are not prepared and sent to the grand jury to be returned into court ignored, if not found to be true bills. The complaint is made to the grand jury, investigated by it, and either dismissed or an indictment ordered, which is then prepared by the public prosecutor and by him submitted to the

grand jury. It is no disparagement to our grand jury system to say that the action of grand juries in finding and refusing to find indictments is influenced more by the probabilities of convictions on the traverse of indictments than by a consideration whether complainants have probable cause for appearing before the grand jury to make their complaints. The grand jury has in its power, by summoning other witnesses, to make its investigations more thorough than was within the power of the complainant, and upon the case thus investigated, the grand jury bases its decision. It may well be supposed that by such investigations it frequently will happen that evidences of guilt which, in the light of the information possessed by the complainant, appeared to be plausible and probable, if not convincing, will be found to be groundless, and that the complainant, on the facts brought out before the grand jury, if he had been informed of them, would have refrained from making his complaint.

The action of the grand jury in refusing to find a bill, is, as an instrument of evidence, *res inter alios acta*. The grand jury is not the proper tribunal to try the issues involved in the civil suit, and the issue passed upon by it in refusing to find a bill is not the real issue presented in the civil action—whether the defendant, on the information at his command, had then probable cause for making the complaint. The general rule is that the record in a criminal proceeding is inadmissible in evidence in a civil suit. To this general rule there are two notable exceptions, in the admission of a plea of guilty to an indictment for an assault and battery as evidence in an action for the civil injury, and the admission of the record of the acquittal, or of the *non pros.*, or other proceeding terminating the criminal prosecution, in an action for a malicious prosecution. I think a further relaxation of the general rule would be impolitic and a violation of principle.

The contention in the present case is whether by the averments in the declaration it appears that the criminal prosecution against the plaintiff was terminated.

The only exception to the rule that no action will lie for a

malicious prosecution until the criminal prosecution has terminated in the plaintiff's favor, is where the prosecution is in itself of such a nature that the accused has no opportunity to contest the complaint and obtain a decision in his favor; as where the plaintiff was committed on articles of peace, for a definite term, unless he should find sureties for the peace. In such a case the plaintiff is allowed, *ex necessitate rei*, to maintain his action, though he was discharged by the effluxion of the time for which he was committed, for the reason that he is not at liberty to controvert the statement of the defendants in making the complaint, and therefore could not have a hearing and obtain a favorable decision. *Steward* v. *Gromett*, 7 *C. B.* (*N. S.*) 191; *Castrique* v. *Behrens*, 3 *E. & E.* 708; *Basebe* v. *Matthews*, *L. R.*, 2 *C. P.* 684.

Except in cases of the class just referred to, the rule is universal that no action can be maintained unless the prosecution has terminated in favor of the plaintiff, and that an action for a malicious prosecution is prematurely brought if it be commenced before the criminal prosecution is finally ended. The cases are uniform on that subject. But there is considerable diversity of views with regard to the nature of the decision or determination which shall be considered a final termination of the prosecution. In some cases it has been held that nothing short of a final acquittal will be sufficient; in other cases it has been held that a *nolle prosequi* by the prosecuting officer will be a sufficient discharge; in others, not. *Cooley on Torts* 186. In this state the refusal of the grand jury to find an indictment has been adjudged to be a sufficient termination of the prosecution, without any formal order of the court discharging the accused. *Potter* v. *Casterline*, 12 *Vroom* 22. By our practice the prosecutor cannot enter a *nolle pros.* without the consent of the court, and the discharge of the accused results from the joint act of the prosecutor and the court, and ends the liability of the accused to further answer upon the indictment. On the view which has been taken of the purpose for which the law requires a termination of the criminal prosecution as a prerequisite to the civil action,

and considering that the rule requires only that the particular prosecution complained of shall have been terminated, and not that the liability of the plaintiff to prosecution for the same offence shall have been extinguished, I think the reasonable rule is that the technical prerequisite is only that the particular prosecution be disposed of in such a manner that it cannot be revived, and the prosecutor, if he intends to proceed further, must institute proceedings *de novo.* *Cooley on Torts* 186; *Clark* v. *Cleveland*, 6 *Hill* 344–347. A *nolle prosequi* has that effect upon an indictment.

The plaintiff was discharged under the sixty-fifth section of the Criminal Procedure act, which provides "that every indictment shall be tried the term or session in which issue is joined, or the term after, unless the court, for just cause, shall allow further time for the trial thereof; and if such indictment be not so tried as aforesaid, the defendant shall be discharged." *Rev., p.* 279. The indictment was found at the term of December, 1877. The order of discharge was made at the term of December, 1879, for the failure to prosecute, as is alleged. In the declaration it is averred that the order of the court was that the plaintiff be discharged " of and from the premises in said indictment specified." The form of the order is quite immaterial, for the power of the court is derived from the statute, and its efficacy must depend upon the force and effect of the statute.

The legal construction of this section was before this court in *State* v. *Garthwaite*, 3 *Zab.* 143; and it was there held that the discharge of a defendant because of the failure to prosecute the indictment as prescribed by this section was not a bar to another indictment for the same offence. Chief Justice Green, who delivered the opinion, designedly left open the question now under consideration, though he took occasion to express an opinion upon the legal construction of the section. He traces this legislation to its origin in the acts of March 11th, 1713–14, (*Allinson* 23,) and February 10th, 1727–28, (*Allinson* 73)—the provisions of which were embodied in the act of February 2d, 1799, (*R. L.* 406)—the first section of

which latter act is the sixty-fifth section of the present Criminal Procedure act; and he shows that, in all the acts whose provisions were embodied in the act of 1799, the term "discharged" imported merely a discharge of the defendant from his recognizance or from imprisonment. "Hence," the learned Chief Justice concludes, "in the act under consideration the legislature must be regarded as directing that the defendant, for want of due prosecution of the indictment, should be discharged from imprisonment or from his recognizance, and not from the indictment, or from the legal consequences of his crime." 3 *Zab.* 148.

I think that the construction put upon this section by the Chief Justice, that an order made by the court under its provisions operates to discharge the defendant from the imprisonment or recognizance only, and not from the indictment, is its proper and legal construction.

In the *Habeas Corpus* act, as well as in the several acts which are embodied in the Criminal Procedure act, the word "discharge" has acquired a settled meaning as signifying a discharge from imprisonment as distinguished from a discharge from the prosecution. A like signification should be assigned to it in the sixty-fifth section of the Criminal Procedure act. To give an order of discharge any other meaning than its known legal signification, would introduce into the law a term of uncertain signification. Upon a judgment entered in the words of the statute, that the defendant "be discharged," who could say, from an inspection of the record, whether it meant a discharge from imprisonment or a discharge from the further prosecution of the indictment, or from the penalty of the crime, unless guided by an adherence to the legal meaning the word "discharge" has received in kindred acts of the legislature? The same reasoning which induced the court, in State *v.* Garthwaite, to deny to a discharge under the act the effect of a discharge from the penalty of the crime, would be equally efficacious in denial of its effect as a discharge from the indictment.

By the common law an indictment is determined either by

the verdict of a jury or by a *nolle pros.*, or by a judgment that it be quashed. In the absence of a clear expression of an intention on the part of the legislature to authorize the court to vacate and annul an indictment on other grounds than its legal insufficiency, I think the section must be construed as providing that the court, for the cause specified, shall exercise its usual power to discharge, which shall relieve the defendant from his imprisonment or his recognizance, but shall not affect the indictment.

Instances frequently occur in which the prosecutor, through the absence or sickness of a witness, finds himself unable to move an indictment within the specified period, where there are reasons why the prosecution should not be abandoned, and yet where it would be proper to relieve the defendant from imprisonment or from his recognizance. In such cases it may be impracticable or unjust to continue the indictment from term to term. An indefinite postponement, and the discharge of the defendant from imprisonment or from his recognizance, without a day, may, under some circumstances, be advantageous to all concerned.

If it be shown that the indictment is kept on foot for the purpose of vexation or oppression, it is not to be presumed that the public prosecutor, on a suggestion from the court, will refuse to exercise his power of entering a *nolle pros.*; and if the prosecutor unreasonably refuses to enter a *nolle pros.*, after a failure to try the indictment in the time prescribed by the statute, the accused is not without remedy. In *King* v. *Pritchard*, 1 *Keble* 525, it was held that if the king make default in trial where the king is a party, &c., the party cannot stir or hasten the cause, nor after his default, without leave of the court or license of the attorney-general. In *Queen* v. *Banks*, 6 *Mod.* 246, it was resolved in the Queen's Bench " that in all indictments or informations here, or indictments removed hither by the prosecutor, for treason, felony, or any inferior offence, the defendant has no other way to hasten on his trial but by application to the court; who, upon hearing the reasons of Mr. Attorney, will, as they see occasion, either give

him further time, or fix him a day peremptorily for the trial, or give the defendant leave to bring it on himself." In the same case, in 2 *Salk.* 652, it was said "that in indictments of treason or felony, if the attorney-general . will delay, the court may give the defendant leave to bring on the trial as they see fit, and so it has been done." Such is the practice as laid down by Mr. Chitty when the indictment is for treason or felony. Until the 60 *George III.*, c. 4, it is said by Mr. Chitty that there appears to have been no mode of compelling a trial on the part of the defendant on a prosecution in the King's Bench for a misdemeanor, when the proceedings were by the attorney-general; but on indictments of treason or felony, if the attorney-general will delay, the Court of King's Bench may give the defendant leave to bring on the trial as they see fit. 1 *Chit. Cr. Law* 487. If the defendant has taken the proper steps to entitle him to a trial, the practice at the Assizes is for the court to order the jury to be called and sworn; and if no one appears to support the prosecution the court will direct an acquittal. *Crown Cir. Comp.* 17, 42. Willans *v.* Taylor, cited above, from 6 *Bing.* 183, is a case where a defendant took the record down for trial and obtained an acquittal, and then prosecuted the complainant for a malicious prosecution. In England the prosecution of misdemeanors of a certain grade, is usually left to private individuals. In this state the prosecution of all indictments, for whatever grade of crime, devolves on the public prosecutor, and the distinction between felonies and misdemeanors has, in that respect, been abolished. Under the control the courts of this state have always exercised over criminal prosecutions, the court, without doubt, has the power, in case the indictment has not been prosecuted with due diligence, in its discretion, to fix a day for trial and order a jury to be called and sworn, and to direct an acquittal for want of evidence if the prosecutor does not appear and proceed to the trial.

If after a discharge under the statute the indictment remains in force, there need be no difficulty in procuring the attendance of the defendant for trial. The defendant may be

brought in by process; but, having been once discharged from attendance upon the court, process ought not to be issued against him without a special order of the court.

For the reason that it does not appear on the face of the declaration that the criminal proceeding has been finally determined, I think there should be judgment on the demurrer for the defendant.